*ʎAO 241
(Rev 10/07)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: Middle District of Florida | |
|---|---|---|
| Name (under which you were convicted): <br><br> Benjamin Neill Lawson | | Docket or Case No.: <br><br> 3:13-CV-1105-J99mmH-uca |
| Place of Confinement : <br> Florida Department of Corrections | Prisoner No.: <br><br> J19813 | |
| Petitioner (include the name under which you were convicted) <br><br><br>      Benjamin Neill Lawson | v. | Respondent (authorized person having custody of petitioner) <br><br>      Secretary of Florida Department of Corrections |
| The Attorney General of the State of FLORIDA | | |

### PETITION

1.    (a) Name and location of court that entered the judgment of conviction you are challenging:

Fourth Judicial Circuit Court, Duval County, Florida

       (b) Criminal docket or case number (if you know):    **16-2005-CF-014803**

2.    (a) Date of the judgment of conviction (if you know):   **10/19/2007**

       (b) Date of sentencing:     **10/19/2007**

3.    Length of sentence:    **Consecutive terms of 15 years and 5 years for 20 years total**

4.    In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes    ☐ No

5.    Identify all crimes of which you were convicted and sentenced in this case:

Count 1 – Driving Under the Influence Manslaughter – 15 years
Count 2 – Driving Under the Influence Serious Bodily Injury – 5 years

6.    (a) What was your plea? (Check one)

        ☑ (1)     Not guilty       ☐ (3)     Nolo contendere (no contest)

        ☐ (2)     Guilty         ☐ (4)     Insanity plea

ᶠ𝗔O 241
(Rev 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.  Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.  If you did appeal, answer the following:

(a) Name of court:    First District Court of Appeal, Florida

(b) Docket or case number (if you know):    1D07-5675

(c) Result:    Affirmed per curiam

(d) Date of result (if you know):    12/22/2008

(e) Citation to the case (if you know):    Lawson v. State, 996 So.2d 218 (1st DCA 2008)

(f) Grounds raised:
The trial court committed reversible error by admitting the blood toxicology test results concerning THCa, the metabolite of THC

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:     Fourth Judicial Circuit Court, Duval County, Florida

(2) Docket or case number (if you know):     16-2005-CF-014803

(3) Date of filing (if you know):     4/15/2009

(4) Nature of the proceeding:     Motion For Post-Conviction Relief, Fla.R.Crim.P.3.850

(5) Grounds raised:
Ineffective assistance of counsel regarding plea offer and negotiations

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes   ☐ No

(7) Result:     Denied

(8) Date of result (if you know):     8/11/2011

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐   Yes    ☐  No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐   Yes     ☐   No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

    (1)  First petition:    ☑  Yes    ☐  No

    (2)  Second petition:  ☐  Yes    ☐  No

    (3)  Third petition:    ☐  Yes    ☐  No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**
The Petitioner was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution concerning Counsel's duties during the plea process.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

After his October 13, 2005, arrest Mr. Lawson was formally charged and arraigned on two (2) counts, Driving Under the Influence (DUI) Manslaughter and DUI Serious Bodily Injury, hereinafter referred to as Counts 1 and 2 respectively or "the DUI charges", on November 3, 2005, with Robert Shafer as his attorney of record.

    On March 14, 2006, Mr. Shafer informed Mr. Lawson that the Assistant State Attorney handling his case, Mark Borello, proposed a plea offer in the range of 5-15 years. Due to the facts and circumstances of the case Mr. Shafer advised Mr. Lawson it would be in his best interests to accept the plea offer. That same afternoon Mr. Lawson made a recorded jail phone call (RJPC) to his mother, Virginia Bergeron, conveying the plea offer and his willingness to accept it. Mr. Lawson also made another RJPC to Mrs. Bergeron later in the week establishing when he would be entering a guilty plea in compliance with the plea offer.
    (Please see insert)

(b) If you did not exhaust your state remedies on Ground One, explain why:

P.6-Ground One: (a)

On March 21, 2006, Mr. Lawson was scheduled to accept the plea offer but was not allowed to because the victim's family had requested to be present when Mr. Lawson pleaded guilty. Disposition of the case was set for March 28, 2006.

On March 24, 2006, Mrs. Bergeron wanted to assure herself about concerns she had about her son accepting the proposed plea offer, especially after talking with one of Mr. Lawson's former cell mates, and contacted The Florida Litigation Center for a second opinion. Scott Salomon responded to Mrs. Bergeron's inquiry and a meeting was eventually arranged to discuss Mr. Lawson's case, during which Rocky Lapomardo, Mr. Salomon's lead investigator, was present. In a RJPC Mrs. Bergeron talked with Mr. Lawson about her meeting, shared the background of Mr. Lapomardo that was given to her, discussed the defenses they proposed and closed with her expectations of a scheduled meeting with Mr. Salomon and Mr. Lapomardo along with Mr. Lawson's grandparents, for the same night. Her main expectation was that Mr. Salomon would be able to say whether he could help or not after reviewing Mr. Lawson's case and having "an idea of what he's looking at." It should be noted that part of the proposed defenses included the incorrect legal rule that statements made by Mr. Lawson were inadmissible due to post traumatic stress. Mr. Lawson later made a RJPC to a friend of his relaying what he had learned about a possible change in counsel, as well as expressing the fact that the victim's family not being present at his last court proceeding on March 21, 2006, was the only reason he did not accept the plea offer. Around 11 p.m. that night, Mr. Salomon and Mr. Lapomardo met with Mr. Lawson after being retained by Mr. Lawson's family.

On March 25, 2006, Mr. Lawson had a RJPC with Mrs. Bergeron describing his meeting with Mr. Salomon and Mr. Lapomardo and informed her that both of them provided three (3) supposedly legal reasons the blood evidence in Mr. Lawson's case, the only evidence to prove Mr. Lawson's intoxication, would be deemed inadmissible. Mrs. Bergeron also detailed how Mr. Salomon's involvement came about and how her meeting with him went. It should noted here that the time line established at this point shows Mr. Salomon had been aware of Mr. Lawson's case in any capacity whatsoever for 16 hours prior to his meeting with Mr. Lawson the night before at 11 p.m. Mr. Lawson then confirmed once more that had the victim's family been present at his last court proceeding on March 21, 2006, he would have accepted the plea offer and "simply – would have plead guilty."

On March 27, 2006, Mr. Salomon filed a Rejection of Plea Agreement along with several other motions on Mr. Lawson's case.

On March 28, 2006, Mr. Lawson appeared in court without the benefit of his new counsel, Mr. Salomon, being present. The trial court clarified recent events in an attempt to erase any confusion and establish the record concerning the unexpected turn of events in Mr. Lawson's case. As such, Mr. Shafer was granted permission to withdraw from representing Mr. Lawson, Mr. Salomon was recorded as Counsel, and the State withdrew all offers after pointing out that "the parties, up to this date, believed that we were in a position to resolve this case."

Almost one full year later, on March 9, 2007, Mr. Lawson was formally charged and arraigned on two (2) additional counts, Vehicular Homicide and Reckless Driving Causing Serious Bodily Injury, hereinafter referred to as Counts 3 and 4 respectively or "the non-DUI charges."

On June 6, 2007, Counsel filed a Motion to Suppress Blood/Ethanol Results.

On June 12, 2007, Counsel withdrew the Motion to Suppress Blood/Ethanol Results without any argument being presented in support of it.

On June 15, 2007, following a jury trial, Mr. Lawson was found guilty of Counts 1, 2, 3, and 4.

Shortly after trial, Mr. Lawson terminated Mr. Salomon as Counsel and hired William Sheppard and Gray Thomas in his case.

On October 19, 2007, a sentencing hearing was held in Mr. Lawson's case. As part of the mitigating evidence in his case, Mr. Lawson presented the argument that Mr. Salomon had improperly intervened in his case, misadvised him about rejecting the plea offer, made false promises and assurances and Mr. Lawson should have accepted the original proposed plea offer and would have had he known Mr. Salomon's acertations were incorrect. The Honorable Judge Mallory Cooper and Mr. Borello, both concurred that Mr. Lawson's case should never have reached trial for there was no evidence in support of his innocence. Despite this, the Court sentenced Mr. Lawson to consecutive prison terms of 15 years for Count 1 and 5 years for Count 2. Due to the "single death/single sentence rule" convictions and sentences were not issued with regards to Counts 3 and 4.

On April 15, 2009, Mr. Lawson filed a Motion for Post-Conviction Relief to Vacate Judgment and Sentence presenting the ground he was ultimately granted an evidentiary hearing on: Ineffective Assistance of Counsel Regarding Plea Offer and Negotiations.

On October 19, 2010, and April 8, 2011, the trial Court held a two part evidentiary hearing on ground one of Mr. Lawson's motion for post-conviction relief during which testimony was given by Mr. Shafer, Mr. Salomon, Mrs. Bergeron and William and Mary Sullivan, Mr. Lawson's grandparents.

Through Mr. Shafer's testimony and evidence presented these key facts were established: Mr. Shafer was a criminal defense attorney with 31 years of experience at that time; a plea agreement had been negotiated with the State in Mr. Lawson's case; due to the substantial case against Mr. Lawson, including, but not limited to, the blood/ethanol results of 0.197% B.A.C. and the traffic homicide investigation report estimating Mr. Lawson was traveling at least 111.88 m.p.h., Mr. Shafer advised Mr. Lawson against going to trial with his case and to accept the plea offer; relying on such advice, Mr. Lawson had demonstrated that he was willing to accept the plea offer; Mr. Shafer was concerned that vehicular homicide, a non-DUI charge would come into play at some point based off of the estimated speed Mr. Lawson was traveling; Mr. Lawson was scheduled to accept the plea offer on March 21, 2006, but was unable to because the victim's family was not present, so disposition was set for March 28, 2006; prior to March 28, 2006, Mr. Shafer had a positive rapport with Mr. Lawson; in court on March 28, 2006, Mr. Lawson's demeanor had changed and he was "turned off to anything" Mr. Shafer had to say; Counsel, when communicating with Mr. Shafer, acted in an unprofessional manner while acquiring Mr. Lawson's case.

Through Mr. Salomon's testimony and evidence presented these key facts were established: Counsel had 13 years of experience as an attorney at the time he was retained by Mr. Lawson's family; Counsel was initially contacted via the internet site, The Florida Litigation Center, for a second opinion in Mr. Lawson's case; such internet site contained the inaccurate and misleading information that Counsel maintained law offices all over the State of Florida when in reality the only office Counsel used was located in Coral Springs, Florida, Counsel had other attorneys practicing in conjunction with him when in actuality Counsel was the sole practioner of the Florida Litigation Center, and Counsel had practiced law in "virtually all" of the counties in Florida when in truth he had only practiced in about five (5) counties total; the Florida Bar ordered Counsel to remove all misleading information once Senior United States Magistrate Judge Peter Palermo wrote to the Florida Bar on November 27, 2006, concerning the "false advertising" by Counsel after he had already been retained by Mr. Lawson's family; prior to this 90% of Counsels' clients were acquired through the internet; Mr. Lawson's case was Counsel's first felony trial ever; Counsel had only been involved in around 30 criminal cases, only about 10 of which were felonies; Counsel had never been involved in a DUI manslaughter or vehicular homicide case, but rather just three (3) or four (4) misdemeanor DUI trials; Counsel did not foresee Counts 3 and 4, the non-DUI charges, forthcoming when he took over the case despite Mr. Lawson informing Counsel he was driving over 100 m.p.h. at their first meeting on the night of March 24, 2006; Counsel's theories of defense hinged on expert testimony that did not turn out favorably for Mr. Lawson and that Mr. Lawson was not arrested on the scene despite reports of his severe intoxication; Counsel advised Mr. Lawson to reject the plea offer to be sentenced in the range of 5-15 years and to proceed to trial with himself, Mr. Salomon, as Counsel; Counsel was aware the State would revoke all offers if the plea offer was not accepted; Counsel prepared the Rejection of Plea Agreement, had Mr. Lawson sign it, and filed it on behalf of Mr. Lawson despite the trial court identifying such Rejection as a *pro se* filing; the Rejection of Plea Agreement was misdated with March 20, 2006, but was actually signed on March 27, 2006; the background provided by Mr. Lapomardo and Counsel concerning Mr. Lapomardo's credentials was inaccurate, referring to Mr. Lapomardo as being a retired F.B.I. agent and Sergeant in the Massachusetts Highway Patrol; Counsel had been suspended and subsequently disbarred from the practice of law by the Florida Supreme Court at the request of the Florida Bar for the protection of the community based on numerous complaints of client fraud from 2005 and 2006, during the same period of time Counsel represented Mr. Lawson; the Florida Bar Security Fund compensated clients over $235,000 because of Counsel's acts of client fraud; Counsel's Florida Bar suspension cited several tax liens against Counsel, one of which came immediately before a retainer was taken in Mr. Lawson's case; the Federal Government prosecuted and convicted Counsel of mail fraud and wire fraud in a $20 million telemarketing scheme; the State of Florida, in the capacity of Broward County, prosecuted and convicted Counsel of organized fraud for defrauding clients out of money and proper representation in the amount of $440,000 and ordered Counsel to pay $121,000 in restitution to clients, stemming from allegations Counsel's law practices, The Florida Litigation Center, Scott Alan Salomon and Associates, and The Salomon Law Center were used in an intricate fraud operation; Counsel questions why Mr. Lapomardo was never prosecuted in this organized fraud case as well; Mr. Lawson and his family were awarded a civil judgment for civil theft in the sum of $436,142.31 against Counsel for his actions in acquiring and representing Mr. Lawson as a client.

Through Mrs. Bergeron's and Mr. and Mrs. Sullivan's testimony and evidence presented these key facts were established: all three were law abiding citizens with no criminal record or knowledge of the legal system; none of the three had ever had any significant dealings with a criminal defense attorney prior to Mr. Lawson's case; Mr. Salomon had guaranteed all three of them that Mr. Lawson's case was a "slam dunk" and he would be acquitted of all charges; over the course of 15 months Mr. Salomon charged Mr. Lawson's family between $125,000 and $150,000 in legal fees, not including the additional fees paid to Mr. Lapomardo as the lead investigator in Mr. Lawson's case.

At the evidentiary hearing Mr. Lawson did not testify, but instead chose to rely on excerpts from RJPCs to provide a more accurate testimony to what transpired five (5) years previous, and remove "the cloud of doubt" that inherently surrounds a petitioner's testimony that is seeking to reduce his or her sentence. Through these recordings and transcripts these key facts were established: Mr. Lawson knew of a plea offer for a sentence in the range of 5-15 years in exchange for his guilty plea; Mr. Lawson knew he faced 12-20 years for Counts 1 and 2, the DUI charges; Mr. Lawson was willing to accept the plea offer prior to Counsel's involvement in his case; prior to Counsel's involvement in his case, Mr. Lawson and Mrs. Bergeron felt he would "get killed" if he proceeded to trial; had the victim's family been present at Mr. Lawson's March 21, 2006 court proceeding Mr. Lawson would have accepted the plea offer then; Counsel conveyed to Mr. Lawson three (3) supposedly legal reasons the blood evidence in Mr. Lawson's case would be deemed inadmissible; Mr. Lawson believed Counsel and Mr. Lapomardo "knew what they were doing" and would "win straight by law."

On June 1, 2011, the State filed a Memorandum of Law opposing Mr. Lawson's Motion for Post-Conviction Relief which included the following important quote and concession: Mr. Lawson "reached the admittedly boneheaded conclusion that he would be better off rejecting a plea agreement with Bob Shafer as his attorney and going to trial with Scott Salomon as his attorney. However 3.850's do not and should not get granted because defendants make ill-advised decisions, and the record is clear that is all that occurred here. No more no less."

The Attorney General for the State of Florida has previously agreed to these facts during the appeal and briefing process after the trial court's denial.

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:
Post-Conviction

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Motion for Post-Conviction Relief, Fla.R.Crim.P.3.850

Name and location of the court where the motion or petition was filed:
Fourth Judicial Circuit Court, Duval County, Florida

Docket or case number (if you know):     16-2005-CF-014803

Date of the court's decision:     8/11/2011

Result (attach a copy of the court's opinion or order, if available):
Denied (see Exhibit A)

(3) Did you receive a hearing on your motion or petition?     ☑ Yes   ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
First District Court of Appeal, Florida

Docket or case number (if you know):     1D11-5415

Date of the court's decision:     1/16/2013

Result (attach a copy of the court's opinion or order, if available):
Affirmed per curiam

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐  Yes     ☐  No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

°₂AO 241
(Rev 10/07)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                                    ☐  Yes    ☐  No

(4) Did you appeal from the denial of your motion or petition?                               ☐  Yes    ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?      ☐  Yes    ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:




(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
        have used to exhaust your state remedies on Ground Two



**GROUND THREE:**


(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Three, explain why?


(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☐  No

(2) If you did not raise this issue in your direct appeal, explain why:


(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion or petition?     ☐  Yes     ☐  No

(4) Did you appeal from the denial of your motion or petition?     ☐  Yes     ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐  Yes     ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)      **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☐ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

⸀ஃAO 241
(Rev 10/07)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

13. Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☑ Yes ☐ No

            If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:

Office of Public Defender, 25 North Market Street, Jacksonville, FL 32202

(b) At arraignment and plea:

Robert Shafer, 305 North Market Street, Jacksonville, FL 32202

(c) At trial:

Scott Alan Salomon, Current address unknown

(d) At sentencing:

William Sheppard, 215 North Washington Street, Jacksonville, FL 32202

(e) On appeal:

Office of the Public Defender, 301 South Monroe Street, Suite 401, Tallahassee, FL 32301

(f) In any post-conviction proceeding:

William Sheppard, 215 North Washington Street, Jacksonville, FL 32202

(g) On appeal from any ruling against you in a post-conviction proceeding:

Pro Se

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?          ☐  Yes     ☑  No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?          ☐  Yes     ☐  No

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Due to the time during which Mr. Lawson's properly filed application for State Post-Conviction Relief per
Fla.R.Crim.P.3.850 from April 15, 2009 to January 16, 2013 not being counted toward any period of
limitation under the appropriate subsections Mr. Lawson is still within his one-year limitation contained in
28 U.S.C. §2244(d)

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

     (1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

          (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

          (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

          (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

          (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

²ᴬAO 241
(Rev 10/07)

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

Direct the Fourth Judicial Circuit Court of Duval County, Florida to issue specific performance of the original plea offer and resentence Mr. Lawson to a term of 5-15 years.

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ 2013 (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

# EXHIBIT A

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.: 16-2005-CF-14803-AXXXMA
DIVISION: CR-G

STATE OF FLORIDA,

v.

BENJAMIN NEILL LAWSON,
    Defendant,
_____/

## AMENDED ORDER DENYING MOTION FOR POST-CONVICTION RELIEF

This matter came before this Court on the Defendant's Motion for Post-Conviction Relief, filed pursuant to Florida Rule of Criminal Procedure 3.850 filed on April 15, 2009. Upon full consideration of the evidence, arguments, and authorities presented, and having otherwise been fully advised, this Court denies the Defendant's Motion for Post-Conviction Relief.

On June 15, 2007, following a jury trial, the Defendant was convicted of driving under the influence (DUI) manslaughter (Count 1), DUI with serious bodily injury (Count 2), vehicular homicide (Count 3), and reckless driving causing serious bodily injury (Count 4). On October 19, 2007, the Defendant was sentenced to consecutive prison terms of fifteen years on Count 1 and 5 years on Count 2. On December 22, 2008 the First District Court of Appeal (First DCA) issued a Mandate *per curiam* affirming the Defendant's convictions and sentences. On April 15, 2009, the Defendant filed the instant Motion. On April 23, 2009, this Court issued an Order Directing the State Attorney to File a Response. On May 20, 2009, the State filed its Pre-Hearing Response to Defendant's Motion for Post-Conviction Relief. On May 28, 2009, the Defendant filed Defendant's Reply to State's Memorandum of Law Opposing Defendant's Motion for Post-Conviction Relief. On October 19, 2010 and April 8, 2011, this Court held an

evidentiary hearing on the Defendant's Motion for Post-Conviction relief, during which assistant State attorney Mark J. Borello, defense counsel Daniel G. Thomas, and the Defendant were present. On May 27, 2011, the Defendant filed his Post-Hearing Memorandum of Law in Support of Defendant's Motion for Post-Conviction Relief. On June 1, 2011, the State filed its Memorandum of Law Opposing Defendant's Motion for Post-Conviction Relief. On June 2, 2011, the Defendant filed his Amended Post-Hearing Memorandum of Law in Support of Defendant's Motion for Post-Conviction Relief. On June 6, 2011, the Defendant filed his Reply to the State's Memorandum of Law Opposing Defendant's Motion for Post-Conviction Relief.

The Defendant raises two claims, which this Court construes as three separate claims, all alleging ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, the Defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense; that is, that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Shere v. State, 742 So. 2d 215 (Fla. 1999). The "standard is reasonably effective, not perfect or error-free counsel." Coleman v. State, 718 So. 2d 827, 829 (Fla. 4th DCA 1998). A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the Defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Roberts v. State, 568 So. 2d 1255, 1259 (Fla. 1990). Further, "[t]o establish prejudice [a defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

2

probability is a probability sufficient to undermine confidence in the outcome.'" Valle v. State, 778 So. 2d 960, 965-66 (Fla. 2001).

In claim one, the Defendant avers that, but for the misadvice of his trial counsel, Scott Salomon ("Mr. Salomon"), he would not have rejected his plea agreement. Specifically, the Defendant asserts that Mr. Salomon fraudulently assured him that he would be acquitted. The Defendant claims he was prejudiced because his plea agreement was for a range of five-to-fifteen years and he received a twenty-year sentence at trial.

The Supreme Court of Florida has specified what a defendant must prove in a claim of ineffective assistance of counsel where counsel advises a defendant to reject a favorable plea offer:

> "The defendant must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed."

Morgan v. State, 991 So. 2d 835, 839-40 (Fla. 2008).

Analyzing these prongs out of order and initially addressing the third prong, the record reflects that the Defendant rejected a plea offer with a range of five-to-fifteen years. Although the Defendant did not testify at the evidentiary hearing, his post-conviction counsel entered into evidence several exhibits, including recorded jail telephone conversations. One such conversation, between the Defendant and his mother, reveals that the Defendant said that his initial trial counsel, Mr. Shafer, advised him that the State's offer was for a range of five-to-fifteen years. (Exhibit A at 2). Second, Mr. Salomon testified at the evidentiary hearing that the plea offer was for a range of five-to-fifteen years, although he did not know how that range was generated. Third, the Defendant signed a "Rejection of Plea Agreement" (Plea Rejection Form)

3

that clearly states that he understood the plea offer to be a range of five-to-fifteen years. The Defendant was sentenced to twenty years, so acceptance of the plea would have resulted in a lesser sentence than that which was imposed. Therefore, the Defendant has met the third prong of Morgan.

Applying the first prong of Morgan, this Court first notes that, although the Defendant claims Mr. Salomon was ineffective for fraudulently assuring him that he would be acquitted, Morgan requires that the Defendant prove that Mr. Salomon failed to convey a plea offer or that he misinformed the Defendant concerning the possible sentence he faced. Id. As to whether Mr. Salomon failed to convey a plea offer (the first part of the first prong of Morgan), the Defendant alleged, in his initial April 15, 2009 Motion for Post-Conviction Relief, that Mr. Salomon "rejected other State offers, even without conveying offers to [the Defendant]." (Def.'s Mot. 4). This claim was not renewed in any subsequent pleadings, and the record reveals that the State made no plea offer for Mr. Salomon to convey. In fact, during the March 28, 2006 plea hearing, and in response to the Defendant's changing attorneys and rejecting his plea offer, the State informed the Defendant that the offer under consideration at that time was revoked and that there would be no further offers from the State. (Exhibit B at 7).

Moreover, the Plea Rejection Form reflects that the Defendant understood that the offer would be withdrawn, that no further offers would be made, and that the case would proceed to trial. During the evidentiary hearing, Mr. Salomon testified that he never asked the State to agree to the original plea offer; he discussed numbers with the State and with the Defendant but nothing developed; he never told the Defendant he rejected an offer because the State made no other offer; he made some offers to the State but those offers were not accepted; and that the State revoked all offers after the Defendant rejected the then-current offer and switched

4

attorneys. Therefore, this Court finds meritless the Defendant's claim that Mr. Salomon failed to convey a plea offer.

As to whether Mr. Salomon misinformed the Defendant concerning the possible sentence he faced (the second part of prong one of <u>Morgan</u>), this Court first notes that the Defendant did not make such a claim and presented no evidence in support of such a claim. Construing the Motion as if the Defendant did raise this ground, this Court finds that the record does not support the allegation. The Defendant did not testify at the evidentiary hearing. Mr. Salomon testified that he told the Defendant, during their initial March 24, 2006 discussion, that he could receive the high end or the low end of the sentencing range; he did not tell the Defendant he could be charged with vehicular homicide; he does not recall making any misrepresentation to the Defendant; and the initial plea offer, worked out by Mr. Shafer and rejected by the Defendant, was for a range of five-to-fifteen years, but he did not know how that range came to be. Thus, the record does not support the construed claim that Mr. Salomon misadvised the Defendant as to the possible sentence he would face at trial.

Even assuming *arguendo* that the Defendant has met the first prong of <u>Morgan</u>, his claim would still fail under the second, which requires the Defendant to prove that he would have accepted the plea but for counsel's errors. The record reflects that, when the Defendant rejected his plea, he was accurately informed of the maximum sentence he would face at trial because the Information, a telephone conversation between the Defendant and his mother, and the Plea Rejection Form show that the Defendant was advised that he faced a possible sentence of twenty years at trial.

Initially, the October 31, 2005 Information charged the Defendant with Counts 1 and 2. Count 1 is a violation of sections 316.193(1) and 316.193(3)3, Florida Statutes, a second-degree

5

felony punishable by a term of imprisonment not exceeding fifteen years. Count 2 is a violation of sections 316.193(1) and 316.193(3)(a)(b)(c)2, a third-degree felony, punishable by a term of imprisonment not exceeding five years. See § 775.082(3)(c), (d), Fla. Stat. (2005). Although this Information did not charge Counts 3 and 4, this Court notes that the addition of Counts 3 and 4 could not have increased the maximum sentence that the Defendant would face at trial without violating double jeopardy principles. See Houser v. State, 474 So. 2d 1193, 1197 (Fla. 1985) (holding that the defendant could not be punished for both DWI manslaughter and vehicular homicide as they arose from a single death); Kelly v. State, 987 So. 2d 1237, 1239 (Fla. 2d DCA 2008) (holding that convictions of both DUI with serious bodily injury and driving without a valid license with serious bodily injury, based upon same injury to same victim, violated double jeopardy principles, where both offenses contained causation element and occurred in commission of single act of operating a vehicle and thereby causing serious bodily injury to another person). Thus, the Information notified the Defendant that he was facing a possible twenty-year sentence.

Furthermore, the Defendant stated, in a jail telephone conversation with his mother, that Mr. Shafer told him he faced twenty years at trial. (Exhibit A at 12). This conversation took place while the Defendant was under the representation of Mr. Shafer and prior to the representation of Mr. Salomon.

Moreover, the Defendant signed a Plea Rejection Form, in which he stated that: he knew his plea offer was for a range of five-to-fifteen years; Mr. Salomon[1] advised him that the maximum sentence is set by statute and could exceed the plea offer; Mr. Shafer recommended that the Defendant accept the offer and advised him that rejecting the offer might result in

---

[1] The Plea Rejection Form uses the phrases "my attorney" and "my former attorney." This Court infers that "my attorney" refers to Mr. Salomon and "my former attorney" refers to Mr. Shafer.

punishment more severe than that set forth in the plea offer; the Defendant nonetheless did not wish to follow the recommendation of Mr. Shafer and wanted to reject the plea offer; and the Defendant understood that the offer would be withdrawn, that no further offers would be made, and that the case would proceed to trial.

Although the record is not clear as to what maximum term Mr. Salomon advised (other than the term was greater than the fifteen-year maximum set forth in the plea offer), the Information, the telephone conversation, and the Plea Rejection form reflect that the Defendant was advised that he faced a possible sentence of twenty years. Thus, even if Mr. Salomon did misadvise the Defendant regarding the possible sentence he faced at trial, the Defendant was still aware, at the time he rejected his plea offer, that he faced a possible sentence of twenty years. The Defendant nonetheless chose to reject the offer and go to trial. The totality of the circumstances shows that the Defendant would have rejected the plea offer despite Mr. Salomon's alleged misadvice. Thus, even if the Defendant's claim met the first prong of Morgan, it fails under the second.

As previously mentioned, this Court construed the Defendant's claim so that it could be addressed under the first prong of Morgan, and the analysis set forth above addresses that construed claim. However, this Court will also address the Defendant's specific claim that, *but for Mr. Salomon's promise of an acquittal*, he would have accepted the plea offer.

As noted, the Defendant did not testify during the evidentiary hearing. The only supporting evidence he provided consisted of transcripts of recorded jail telephone calls with his mother and testimony of family members stating that Mr. Salomon promised them an acquittal. To the extent that the Defendant claims he would have accepted the plea offer but for Mr. Salomon's false assurances of acquittal to the Defendant's *family members*, this Court does not

see why it should not apply the Eleventh Circuit's rule that influence by family members does not make a plea involuntary. <u>Patel v. United States</u>, 252 F. App'x. 970, 976 (11th Cir. 2007) ("Unavoidable influence or pressure from sources such as co-defendants, friends or family does not make a plea involuntary . . ."). Although <u>Patel</u> involved a defendant *accepting* a plea agreement, as opposed to going to trial, the rule can be applied in the instant case. In fact, the Defendant argues for such an application:

> "Although most of the cases in this area of law are challenges to judgments entered upon guilty pleas where a viable defense existed but was not pursued by counsel or of which a defendant was not informed, *Plancarte*[2], *Yanes*[3] and other cases establish that the same considerations apply to a defendant, in a post-conviction motion, challenging a post-trial disposition more severe than a previously-available plea agreement that was rejected solely because of ineffective mis-advice of counsel."

(Def.'s Amen. Mem. of Law at 4). Thus, just as family members' influence on a defendant does not make the *acceptance* of a plea agreement involuntary, such influence does not make the *rejection* of a plea agreement involuntary. Because the Defendant's claim does not fit into the narrow first prong of <u>Morgan</u>, this Court applies the broader <u>Strickland</u> analysis and notes that it fails under the first prong. Furthermore, it fails under the second prong of <u>Strickland</u> for the same reasons set forth in this Court's analysis of the Defendant's first claim.

To the extent that the Defendant contends that Mr. Salomon made false assurances of acquittal to *the Defendant*, this Court notes that, because the Defendant did not testify during the evidentiary hearing, the only evidence he presented in support of his claim was transcripts of his recorded jail telephone conversations. The most relevant conversation, between the Defendant

---

[2] <u>See Plancarte v. State</u>, 975 So. 2d 487 (Fla. 2d DCA 2007) (counsel's deficiency in failing to advise defendant that he was subject to sentencing under the 10-20-Life statute, resulting in rejection of a five-year plea offer).

[3] <u>Yanes v. State</u>, 960 So. 2d 834, 836 (Fla. 3d DCA 2007) (plea offer rejected on the basis of counsel's misadvice that trial court would grant motion to suppress statements).

and his mother, took place prior to the Defendant's plea rejection and shortly after the Defendant's July 24, 2006 meeting with Mr. Scott Salomon:

| | |
|---|---|
| Mom: | Well, like Scott said, you know, he's got - - he's not starting at ground zero. He's like negative five. He's got to get back to ground zero and then go forward. |
| Ben: | Uh-huh. |
| Mom: | But, you know, he's - - |
| Ben: | He didn't tell me any of that. I mean, he didn't really go into any depth about the case. He just asked me questions. |

(Exhibit C at 16). This dialogue does not support the assertion that Mr. Salomon assured the Defendant of an acquittal. Rather, it reveals that the Defendant thought that Mr. Salomon did not go into any depth about the case and only asked questions.

Furthermore, during the evidentiary hearing, Mr. Salomon testified to the following: he did not make any assurances of an acquittal to the Defendant; he told the Defendant that he would take the case to trial, if that was the Defendant's desire; and the Defendant's mother, Virginia Bergeron, told him she did not want the Defendant to go to prison without a trial or at least "litigating." Ms. Bergeron testified to the contrary. Even taking into account Mr. Salomon's history, this Court finds Mr. Salomon's testimony more persuasive than the evidence provided by the Defendant. See Laramore v. State, 699 So. 2d 846 (Fla. 4th DCA 1997). Therefore, this Court finds that the Defendant has not proved that Mr. Salomon guaranteed an acquittal. Accordingly, the defendant's claim is denied.

In his third claim, the Defendant alternatively alleges that, even without the alleged fraudulent guarantee of an acquittal, Mr. Salomon's failure to anticipate the State's addition of

9

Counts 3 and 4 amounts to misadvice. Taking all evidence into consideration, and under the same logic set forth in this Court's analysis of the Defendant's first claim, this Court finds that the Defendant knew, while under the representation of Mr. Salomon and as he rejected the plea offer, that he faced a possible twenty-year sentence for Counts 1 and 2. Double jeopardy would prohibit the imposition of additionally time for Counts 3 and 4. Therefore, this Court finds that, at the time the Defendant rejected his plea offer, he was aware that he faced a possible twenty-year sentence if he proceeded to trial. Nonetheless, the Defendant chose to have his day in court and was convicted and sentenced to consecutive prison terms totaling twenty years. The Defendant has failed to show prejudice. Accordingly, his claim is denied.

In view of the above, it is:

**ORDERED AND ADJUDGED** that the Defendant's Motion for Post-Conviction Relief is **DENIED.** The Defendant shall have thirty days from the date that this Order is filed to take an appeal, by filing Notice of Appeal with the Clerk of the Court.

**DONE AND ORDERED** in Chambers, at Jacksonville, Duval County, Florida, on this _____ day of _____, 2011.

_____
ELIZABETH A. SENTERFITT, Circuit Judge

10

## CERTIFICATE OF SERVICE

I do certify that a copy hereof has been furnished to the Defendant by United States mail

this _____ day of _____, 2011.

_____
Deputy Clerk

Copies to:

Office of the State Attorney
Division: CR-G

Wm. J. Sheppard, Esquire
Sheppard, White, Thomas & Kachergus, P.A.
Counsel for the Defendant
215 Washington Street
Jacksonville, Florida 32202

Case No.: 16-2005-CF-14803-AXXXMA
Attachments: Exhibits A-C

/bbl, cdv

11